## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LESTER A. LEACH,** ) | |
|   **1107 Blue Wing Terrace** ) | |
|   **Upper Marlboro, MD 20774,** ) | |
| ) | |
|      **Plaintiff,** ) | |
| ) | |
|     **v.** ) | **Civ. Action No.** |
| ) | |
| **STEVEN MNUCHIN,** ) | |
|   **Secretary of the Treasury** ) | |
|   **1500 Pennsylvania Avenue, NW** ) | |
|   **Washington, D.C. 20220,** ) | |
| ) | |
|     **Defendant.** ) | |
| _____ ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

## PRELIMINARY STATEMENT

1.)    Lester A. Leach is an African American male who engaged in protected EEO activity, whose official position is ostensibly the supervisory Division Director (GS-15) of the Security Division in the Protection Directorate of the U.S. Mint ("the Mint").  The mission of the Division Mr. Leach headed includes protecting the Mint's assets, facilities, employees, and visitors. Beginning on July 18, 2016, Mr. Leach has continuously participated in protected EEO activity, starting by utilizing the administrative discrimination complaints process and continuing through the initiation and pursuit of this suit.  As Division Director, Mr. Leach had two separate Branches and 13 white collar employees reporting to him.  He was competitively selected for this position in August of 2006.

2.)    All of Mr. Leach's annual performance appraisals as Division Director were either Outstanding or Exceptional, the highest rating levels.  Mr. Leach received cash bonuses

commensurate with those ratings, and the record of his conduct was unimpeachable, until defendant took the discriminatory and retaliatory actions against Mr. Leach that are the subjects of this suit.

3.)     On October 19, 2016, shortly before defendant took the first of the employment actions at issue in this case, Mr. Leach's immediate supervisor, Bill Bailey, an African American male, and his second line supervisor, Dennis O'Connor, a Caucasian male, approved a perfect, Outstanding appraisal for Mr. Leach for Fiscal Year 2016.

4.)     At the same time, the three Caucasian senior Mint executives and a Caucasian acting senior executive whom Mr. Leach had identified as responsible for discriminating against him in his then-pending EEO complaint, were notified that they were required to give Affidavits as part of the investigation of that complaint and did so in short order.

5.)     The three permanent senior executives were David Motl, the Mint's acting Deputy Director for Management; Richard Peterson, the Mint's Deputy Director for Operations; and Rhett Jeppson, the Mint's Principal Deputy and acting Director.  All three were senior to Mr. Leach's supervisors, Mr. O'Connor and Mr. Bailey.

6.)     On December 21, 2016, Arnaldo Medina, a subordinate of Mr. Leach's, sent an email to Mr. O'Connor and Mr. Bailey about alleged "constant" "abusive behavior" by Mr. Leach going back to June of 2015.  Mr. Medina did not ask to begin defendant's grievance process or for any other relief, except to be reassigned for 60 to 90 days while he looked for a new position.

7.)     Mr. Medina's allegations about Mr. Leach were known by the Mint to be false. Nonetheless, in a meeting held in or about early January of 2017, Mr. Motl, Mint counsel Jean Gentry, Mr. Bailey, and Mr. O'Connor planned how to go about using the fictional hostile work environment Mr. Leach supposedly created in his division as a pretext to discriminate and retaliate against him, starting with relieving Mr. Leach of all substantive duties of his position as Division

Director and opening an internal "administrative investigation" into Mr. Leach's management of his Division, without first allowing Mr. Leach to address Mr. Medina's false allegations.

8.)   On January 11, 2017, Mr. Leach initiated the administrative EEO complaints process again, initially focusing in great part on this pretextual "administrative investigation" and having been relieved of his substantive duties as Division Director.

9.)   Several days later, Mr. Motl, Ms. Gentry, Mr. Bailey, and/or Mr. O'Connor decided to escalate the intensity and severity of the Mint's pretextual investigation of Mr. Leach by referring him for a formal investigation to the Department of the Treasury Office of Inspector General ("OIG").  During that investigation, both Mr. Bailey and Mr. O'Connor gave false statements to investigators that Mr. Leach had repeatedly been counseled for abusive behavior toward subordinates over a period of years; failed to apprise OIG investigators of the superlative ratings they had given Mr. Leach over the years; and also pointed OIG investigators toward employees in Mr. Leach's Division who Mr. Baily and Mr. O'Conner knew had justifiably been given performance-based and disciplinary actions from Mr. Leach.  Predictably, based on the pretextual actions of Mr. Bailey and Mr. O'Connor, the OIG report of investigation recounted what it wrongly believed was a neutral accounting of Mr. Leach's management of his division.

10.)   While Mr. Leach was continuing to engage in protected EEO activity, using the Medina email and investigation of Mr. Leach's management of his division as a pretext, the Mint actively discriminated and retaliated against Mr. Leach by continuing to idle Mr. Leach; detailing Mr. Leach to the Mint's Information Directorate, where he has been performing unclassified, non-supervisory, support-related assignments below his grade level that are markedly inferior to those of his official position as Division Director; rendering Mr. Leach's official position as Division Director superfluous by creating a new GS-15 position as Assistant Deputy Director in the

Protection Directorate; selecting a lower-graded security employee less qualified than Mr. Leach for that position; permanently relieving Mr. Leach of his official duties and transferring him out of the Protectorate Division; proposing to suspend and then suspending Mr. Leach and using that suspension to terminate Mr. Leach from defendant's telework program.

11.) This case seeks redress for defendant's discrimination and retaliation toward Mr. Leach. It arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16 (incorporating 42 U.S.C. §§2000e-2, e-3), and by way of relief seeks declaratory, injunctive, and equitable relief, including Mr. Leach's restoration to a position commensurate with his background, experience, and accomplishments; compensatory damages; and an award of Mr. Leach's attorneys' fees and costs.

## PARTIES, JURISDICTION, AND VENUE

12.) Plaintiff Lester A. Leach is an African American male who engaged in protected EEO activity before and during the events that give rise to this case. At all relevant times, Mr. Leach has been employed by the U.S. Mint. He resides at the address recited in the caption of this Complaint.

13.) Defendant Steven Mnuchin is the Secretary of the Treasury, the Cabinet official who heads the Department of Treasury, and is sued in his official capacity only. The Treasury Department is in the Executive Branch of the federal government. Its mission includes promoting economic growth and stability through financial and fiscal policies to support investment, economic stability, and job creation. The U.S. Mint is a component of the Treasury Department and, among other things, is the world's largest manufacturer of coins, medals, and numismatic products.

14.) Jurisdiction of this Court is based upon 28 U.S.C. §1332; and 42 U.S.C. §2000e-16 (incorporating 42 U.S.C. §2000e-2, 3, 5(c)). Venue lies here pursuant to 42 U.S.C. §2000e-16

(incorporating 42 U.S.C. §2000e-5(f)(3)), because the discriminatory and retaliatory actions of defendant at issue occurred in this judicial district where plaintiff is and would have been employed but for defendant's unlawful actions.

## STATEMENT OF THE CASE

### Background

15.)     Plaintiff Lester Leach is an African American male whose official position of record is supervisory Division Director (GS-15) of the Security Division in the Mint's Protection Directorate.

16.)     Mr. Leach is a Supervisory Security Specialist and the mission of the Division he officially heads includes protecting the Mint's monetary and bullion assets, as well as its facilities, properties, employees, and visitors.  That Division is also responsible for establishing Mint security directives, developing and implementing Mint storage policies and programs; and ensuring the effectiveness of Mint emergency preparedness plans.  As Division Director, Mr. Leach had two separate Branches and 13 white collar employees reporting to him.

17.)     Mr. Leach was competitively selected for that position in August of 2006.

18.)     All of Mr. Leach's annual performance appraisals in that position were either Outstanding or Exceptional.  Mr. Leach uniformly received bonuses and awards commensurate with his ratings, totaling approximately $45,000.00 since he began with the Mint in 2002.

19.)     For FY 2016, Mr. Leach's last full year as Division Director, he not only received an Outstanding rating, Mr. Leach also received a perfect overall score of 200 and the highest rating possible in the critical element "Supervisory Leadership" in his performance plan.

20.)    Before being chosen as Division Director, Mr. Leach had a strong background in physical security, IT security, and management, including service as a GS-14 Supervisory Technical Security Specialist.

## Commencement of Defendant's Discrimination and Retaliation

21.)    On July 18, 2016, Mr. Leach commenced the EEO discrimination complaints process over being denied funding to attend job-related higher-level training, in particular the coursework being given at the Harvard University Kennedy School for Executive Education known as "Cyber-Security: The Intersection of Policy and Technology."  In that complaint, which would later be assigned Mint No. 16-0685-F, Mr. Leach pointed to similarly situated Caucasian managers whose coursework and training were funded by the Mint.

22.)    On August 18, 2016, after a satisfactory resolution could not be reached during the informal phase of the administrative complaints process, Mr. Leach filed a formal administrative complaint in Mint No. 16-0685-F.  Defendant's retaliation against Mr. Leach for engaging in the protected EEO process in that complaint is among the subjects of this case.  The complaints process in that matter itself concluded with a decision by the EEOC upholding defendant's Final Agency Decision on June 20, 2018, which is not at issue here.  Neither defendant nor the EEOC conducted a hearing in this matter.

23.)    In that formal administrative complaint, Mr. Leach did not identify his immediate supervisor, the Mint's Deputy Chief of Police Bill Bailey, an African American male, or his second line supervisor, the Mint's Chief of Police Dennis O'Connor, a Caucasian male, as officials responsible for discriminating against him.

24.)    In fact, on October 19, 2016 and October 20, 2016, Mr. O'Connor and Mr. Bailey signed off on Mr. Leach's perfect FY 2016 performance appraisal described above in paragraph 19.

That appraisal was based on their true and accurate assessment of Mr. Leach's performance in FY 2016.

25.)    Rather than naming Mr. Bailey or Mr. O'Connor, Mr. Leach identified three permanent and one acting senior management officials of the Mint in his complaint Mint No. 16-0685-F as having discriminated against him.

26.)    The three permanent senior executives were David Motl, the Mint's acting Deputy Director for Management; Richard Peterson, the Mint's Deputy Director for Operations; and Rhett Jeppson, the Mint's Principal Deputy and acting Director.

27.)    These three Mint executives, all Caucasian males, were senior to Mr. Leach's supervisors, Mr. O'Connor and Mr. Bailey.

28.)    The fourth official Mr. Leach identified as responsible for discriminating against him was Joseph Gioeli, a Caucasian male who was the acting Chief Information Officer.

29.)    Between October 19 and October 24, 2016, all four of these officials were notified by an outside EEO investigator that they were required to give Affidavits in the investigation of Mint No. 16-0685-F.

30.)    Between November 9, 2016, and December 6, 2016, each of the four gave and executed an Affidavit in the investigation of Mint No. 16-0685-F and denied having discriminated against Mr. Leach.

31.)    On December 21, 2016, Arnaldo Medina, a security specialist under Mr. Leach's supervision, sent an email to Mr. O'Connor and Mr. Bailey about alleged "constant" "abusive behavior" by Mr. Leach going back to June of 2015. Although the Mint has a formal Administrative Grievance System in place, Mr. Medina did not file a grievance or ask for the grievance process to be started. He also did not ask that Mr. Bailey or Mr. O'Connor look into his allegations. Mr.

Medina's only request was that he be reassigned for between 60 and 90 days in order for him to find a new job.

32.)     Mr. Medina's allegations against Mr. Leach were known to be false by the Mint. Mr. Leach had brought Mr. Medina's deficiencies to the attention of Mr. Bailey and Mr. O'Connor, and both had rated Mr. Leach at the Outstanding level and given Mr. Leach top marks in the critical element "Supervisory Leadership" before and during his supervision of Mr. Medina.

33.)     Beginning after Mr. Medina sent an email to Mr. Bailey and Mr. O'Connor in which he made false allegations about Mr. Leach's management, defendant placed Mr. Leach under investigation in order to intentionally discriminate and/or retaliate against Mr. Leach. They did so either because the investigation itself or in combination with other employment actions identified in this Complaint would harm Mr. Leach by causing material and objective adverse changes to the terms, conditions, privileges, and compensation of his employment with the Mint.

### Continuation of Defendant's Violations of Mr. Leach's Civil Rights

34.)     No later than January 9, 2017, Mr. Motl, Mr. Bailey, Mr. O'Connor, and Mint counsel Jean Gentry held a meeting to consider how to use Mr. Medina's false allegations against Mr. Leach despite his consistent Outstanding performance reviews. They did so without affording Mr. Leach the opportunity to address the allegations first.

35.)     Collectively, they decided to conduct an internal "administrative investigation" into Mr. Medina's allegations and use the commencement of that investigation as a pretext to discriminate and retaliate against Mr. Leach. They started by relieving Mr. Leach of all substantive duties of his position as Division Director including, but not limited to, his supervisory duties, and by periodically giving him a few make-work assignments in their place.

36.)     On January 11, 2017, Mr. Leach timely initiated the informal administrative complaints process concerning the employment actions that are at issue in this case for the first time, initially focused in great part on having been placed under internal investigation and relieved of his duties as Division Director.  This complaint would later be assigned Mint No. 17-0291-F.

37.)     No later than January 17, 2017, Mr. Motl, Mr. Bailey, Mr. O'Connor, and/or Ms. Gentry escalated the intensity and severity of the Mint's pretextual investigation of Mr. Leach.  One or more of them used Mr. Medina's false allegations to make a referral to the Department of the Treasury Office of Inspector General ("OIG") for an official investigation of Mr. Leach.

38.)     The Mint then used the initiation of OIG's investigation as a pretext to continue to sideline Mr. Leach, an investigation that would have run for a longer period than an internal "administrative investigation," and to enhance and facilitate defendant's discrimination and retaliation against Mr. Leach.

39.)     On February 6, 2017, during interviews by OIG investigators, Mr. Bailey and Mr. O'Connor knowingly made pretextual statements about Mr. Leach's management of his subordinates.

40.)     Both falsely alleged that Mr. Leach had been repeatedly counseled for his abusive behavior toward subordinates, including Mr. Medina, over a period of years and that Mr. Leach nonetheless continued to engage in that behavior.  The two also steered the OIG investigation toward subordinates of Mr. Leach against whom he had justifiably taken performance-based or disciplinary actions.  Mr. Leach had kept Mr. Bailey and/or Mr. O'Connor informed about these actions.  One or both of them had concurred in these actions, and all of the actions were taken during the period that Mr. O'Connor and Mr. Bailey had given Mr. Leach Outstanding or Exceptional performance ratings.

41.)     Neither Mr. Bailey nor Mr. O'Connor disclosed to the OIG investigators their perfect performance appraisal of Mr. Leach for FY 2016, that appraisal's top rating for Mr. Leach's "Supervisory Leadership," or their previous Outstanding and Exceptional appraisals of Mr. Leach as Division Director.

42.)     The OIG investigation continued until November 17, 2017.

43.)     Even before the OIG investigation was concluded, defendant took active steps to relieve Mr. Leach of his official duties on a permanent basis.

44.)     In May of 2017, and despite an agency-wide hiring freeze, the Mint created a new GS-15 supervisory Assistant Deputy Chief position in the Protection Directorate, which rendered Mr. Leach's official position as Division Director superfluous.

45.)     In August of 2017, the Assistant Deputy position was announced for competition. Mr. Leach could have been reassigned into that position laterally because he was already a GS-15, even though it was at a more desirable position and at a higher level in the hierarchy of the Protection Directorate than Mr. Leach's official position.  However, the Mint had no intention of considering Mr. Leach for the Assistant Deputy position both because they had referred him to the OIG for an investigation that was still on-going and to continue to discriminate and retaliate against Mr. Leach.

46.)     In short order, Bobby McCoy, an African American security employee lower graded and significantly less qualified than Mr. Leach, was selected for the position.

47.)     During this time and through the present, Mr. Leach's official position as Division Director has gone unfilled.

48.)     On September 14, 2017, Mr. Leach timely initiated the informal administrative complaints process concerning the employment actions that are at issue in this case for the second

time, initially focused in great part on the newly created Assistant Deputy Chief position.  This administrative complaint would later be assigned Mint No. 17-0914-F.

49.)     OIG concluded its investigation on November 17, 2017, and transmitted a report of investigation to Mr. O'Connor that same day.

50.)     Relying on the false and pretextual allegations of Mr. Bailey and Mr. O'Connor and witnesses they steered OIG to who had performance and/or conduct issues under Mr. Leach, the report of investigation found that Mr. Leach had created a hostile work environment toward subordinates.

51.)     The Mint used the OIG report as a pretext to detail Mr. Leach out of his position indefinitely to the Information Technology Directorate ("ITD"), where he was assigned to perform unclassified non-supervisory duties below his grade level and outside of his career field.  At the time of this initial detail, no time had been determined for its duration and the Mint did not advise Mr. Leach that he would not be returning to the Protection Directorate.

**Culmination of the Mint's Discrimination and Retaliation**

52.)     On January 2, 2018, Mr. Leach timely filed a formal administrative EEO complaint in Mint No. 17-0914-F, focused at that time in large part on challenging, among other matters, defendant's actions in creating the Assistant Deputy Chief position, selecting someone other than him for the position, and detailing him to ITD.

53.)     On January 31, 2018, allegedly relying on the OIG report and a misunderstanding on Mr. Leach's part about a small delinquency on his government-issued credit card, Mr. Bailey proposed to suspend Mr. Leach for five days without pay and remove Mr. Leach from the Mint's telework program.

54.)     Effective February 15, 2018, Mr. Leach was officially detailed to ITD even though it has no permanent position for Mr. Leach.  Since being detailed to ITD, Mr. Leach has been performing and continues to perform non-supervisory, support-related assignments that offer significantly less responsibility, opportunities for professional exposure, and opportunities for professional advancement than his official position in the Protection Directorate.

55.)     On March 9, 2018, Mr. Leach timely amended his administrative complaint in Mint No. 17-0914-F to include claims over his proposed suspension and detail to the Mint's Information Technology Division.

56.)     On March 14, 2018, Mr. Leach replied in writing to the notice of proposed suspension.  In his written reply, Mr. Leach proved that he had not behaved inappropriately toward Mr. Medina or any other of his subordinates; recounted the issues he had had with Mr. Medina's performance and that he had been given the highest possible ratings since Mr. Medina came under his supervision; explained how a delinquency with his government credit card arose without his knowledge; showed that he had not been ignoring directions to satisfy that delinquency; and that he in fact had paid that balance before Mr. Bailey proposed to suspend him.

57.)     Mr. Leach also demonstrated that any lingering doubt on the part of the Mint about its charges would have been dispelled if the Mint had asked Mr. Leach about them before proposing to suspend him.

58.)     For example, Mr. Leach demonstrated that Mr. Medina had fabricated a claim that Mr. Leach hounded him about work while he was on vacation in December of 2016.  In fact, Mr. Leach called Mr. Medina a total of twice.  On one of those occasions, Mr. Medina had taken several days' leave after his father had taken a fall, and Mr. Leach called to inquire about his recovery.  On

the other occasion Mr. Leach called Mr. Medina to ask whether he planned to be out through the end of the year holidays.  Neither of those calls was abusive or harassing.

59.)    Mr. Leach's reply also demonstrated that to the extent the OIG report of investigation was based on statements of several of Mr. Leach's subordinates, they were unfounded and given by  employees who were not credible.  Mr. Leach had genuine, well-founded issues with those employees' performance or conduct and had conferred about those issues with Mr. Bailey and/or Mr. O'Connor when they occurred. The two supervisors had issued Mr. Leach Outstanding or Exceptional ratings during each rating cycle in which Mr. Leach had taken corrective action.

60.)    On April 4, 2018, Mr. Leach timely initiated the informal administrative complaints process for the third time concerning the employment actions that are at issue in this case, initially focused in great part on his suspension (both proposed and imposed) and defendant's pretextual reliance on the OIG investigation which, in great part, provided the basis for his suspension.  This administrative complaint would later be assigned Mint No. 18-0428-F.

61.)    On April 11, 2018, without legitimate non-discriminatory and non-retaliatory reasons, Mr. O'Connor officially suspended Mr. Leach for two days and removed him from the agency's teleworking program, in which he had previously participated extensively while Division Director.

## EXHAUSTION OF REMEDIES

62.)    Mr. Leach timely initiated the informal administrative complaints process concerning the employment actions that are at issue in this case for the first time on January 11, 2017, specifically his having been placed under investigation and relieved of his duties as Division Director.  On March 9, 2017, Mr. Leach timely filed a formal administrative EEO complaint that was assigned Mint No. 17-0291-F over these and like and related issues.  An investigation, which

Mr. Leach participated in in all respects, was completed on July 27, 2017, after which Mr. Leach timely filed a request for a hearing with the EEOC.  Initial proceedings before the EEOC were concluded with an Order on November 14, 2018, remanding the complaint to the Mint.  More than 180 days have elapsed since Mr. Leach filed this administrative complaint without a Final Agency Decision having been issued.

63.)     Mr. Leach timely initiated the informal administrative complaints process for the second time concerning the employment actions that are at issue in this case on September 14, 2017, over the creation of the position of Assistant Deputy Chief in the Protection Directorate, the announcement of that position while Mr. Leach was under investigation by OIG, and his non-selection for that position.  On January 2, 2018, in Mint No. 17-0914-F, Mr. Leach timely filed a formal administrative EEO complaint over these same issues; and, on March 9, 2018, timely amended that formal administrative complaint to include his proposed suspension without pay, and his removal from his position as Division Director in the Protection Directorate and detail to the Mint's Information Technology Division.  An investigation, which Mr. Leach participated in in all respects, was completed on June 8, 2018.  Defendant's Final Agency Decision was issued in due course and received by Mr. Leach on September 26, 2018.

64.)     Mr. Leach timely initiated the administrative complaints process for the third time concerning the employment actions that are at issue in this case with an amendment to his pending complaint (Mint No. 17-0914-F) on May 25, 2018, over his suspension and removal from defendant's telework program.  On June 20, 2018, in Mint No. 18-0428, after defendant directed Mr. Leach to file a separate administrative complaint, Mr. Leach timely filed a formal administrative EEO complaint over his suspension and removal from defendant's telework

program.  More than 180 days have elapsed since Mr. Leach filed this administrative complaint without a Final Agency Decision having been issued by defendant.

65.)     Through the foregoing actions and all others required of him by law and regulation, Mr. Leach timely exhausted the administrative remedies available to him to utilize the administrative EEO complaints processes over the employment actions that are at issue in this case and initiated this action within the time prescribed by 42 U.S.C. §2000e-16(c).

## COUNT I
## (Retaliation)

66.)     Plaintiff repeats the allegations contained in paragraphs 1 through 65 above, as though fully set forth here.

67.)     Beginning on July 18, 2016, and continuing through the present, Mr. Leach has been engaged in EEO activity protected under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3 (incorporated into 42 U.S.C. §2000e-16(c)), with the initiation and pursuit of the administrative discrimination complaints processes in Mint No. 16-0685-F, Mint No. 17-0291-F, and Mint No. 18-0428-F; in appeals to the Equal Employment Opportunity Commission of one or more of these administrative complaints; and now in this civil action.

72.)     Defendant took one or more of the following materially adverse actions against plaintiff that would likely dissuade a reasonable worker from making or supporting a charge of discrimination:

a.)     In or about December of 2016 and January of 2017, first placing plaintiff under internal administrative investigation in defendant's Protection Directorate, and then referring plaintiff for investigation by defendant's Office of Inspector General, providing materially false information during the OIG investigation, steering investigators toward employees under Mr. Leach's supervision with whom he had genuine performance-based and conduct issues and failing

15

to convey material information favorable to plaintiff during that investigation; either by themselves or with knowledge that doing so would foreseeably cause plaintiff to suffer materially adverse, objective changes in the terms, conditions, privileges and compensation in plaintiff's employment.

b.)     No later than January 9, 2017, relieving plaintiff of his substantive, supervisory duties as Division Director of the Security Division of defendant's Protection Directorate, and instead assigning him ad hoc, make-work assignments in their place that were markedly inferior to and significantly less desirable than the duties plaintiff had been performing as Division Director.

c.)     Between May 24, 2017, and May 31, 2017, creating a new GS-15 supervisory Assistant Deputy Chief position in the Protection Directorate and rendering plaintiff's official position as Division Director superfluous.

d.)     In August of 2017, announcing the Assistant Deputy Chief position in the Protection Directorate for competition.

e.)     In or around August of 2017, selecting an African American security employee lower graded and significantly less qualified than plaintiff for the Assistant Deputy Chief position.

f.)     On January 31, 2018, proposing to suspend plaintiff for five days and remove him from defendant's telework program.

g.)     In or around January 31, 2018, and February 15, 2018, detailing plaintiff out of his official position to the Information Technology Directorate ("ITD"), where he has been assigned ever since to perform unclassified non-supervisory duties below his grade level that are markedly inferior to those of his official position as Division Director.

h.)     On April 6, 2018, suspending plaintiff for two days and removing him from the agency's teleworking program.

73.)     Defendant took one or more of the foregoing materially adverse actions in order to retaliate against plaintiff because of his participation in EEO activities protected by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16 (incorporating 42 U.S.C. §2000e-3).

74.)     Defendant's violation of plaintiff's civil rights caused him to suffer emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life, and materially injured plaintiff's career.

## COUNT II
### (Retaliation – Hostile and Abusive Work Environment)

75.)     Plaintiff repeats the allegations contained in paragraphs 1 through 74 above, as though fully set forth here.

76.)     Beginning on July 18, 2016, and continuing through the present, Mr. Leach has been engaged in EEO activity protected under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3 (incorporated into 42 U.S.C. §2000e-16(c)), with the initiation and pursuit of the administrative discrimination complaints processes in Mint No. 16-0685-F, Mint No. 17-0291-F, and Mint No. 18-0428-F; in appeals to the Equal Employment Opportunity Commission of one or more of these administrative complaints; and now in this civil action.

77.)     Defendant intentionally subjected plaintiff to a hostile, severe, and pervasively abusive work environment that would likely dissuade a reasonable worker from making or supporting a charge of discrimination by taking the following actions, among others:

a.)     In or about December of 2016 and January of 2017, first placing plaintiff under internal administrative investigation in defendant's Protection Directorate, and then referring plaintiff for investigation by defendant's Office of Inspector General, providing materially false information during the OIG investigation, steering investigators toward employees under Mr. Leach's supervision with whom he had genuine performance-based and conduct issues and failing

to convey material information favorable to plaintiff during that investigation; either by themselves or with knowledge that doing so would foreseeably cause plaintiff to suffer materially adverse objective changes in the terms, conditions, privileges and compensation in plaintiff's employment.

b.)     No later than January 9, 2017, relieving plaintiff of his substantive, supervisory duties as Division Director of the Security Division of defendant's Protection Directorate, and instead assigning him ad hoc, make-work assignments in their place that were markedly inferior to and significantly less desirable than the duties plaintiff had been performing as Division Director.

c.)     Between May 24, 2017, and May 31, 2017, creating a new GS-15 supervisory Assistant Deputy Chief position in the Protection Directorate and rendering plaintiff's official position as Division Director superfluous.

d.)     In August of 2017, announcing the Assistant Deputy Chief position in the Protection Directorate for competition.

e.)     In or around August of 2017, selecting an African American security employee lower graded and significantly less qualified than plaintiff for the Assistant Deputy Chief position.

f.)     On January 31, 2018, proposing to suspend plaintiff for five days and remove Mr. Leach from defendant's telework program.

g.)     In or around January 31, 2018, and February 15, 2018, detailing plaintiff out of his official position to the Information Technology Directorate ("ITD"), where he has been assigned ever since to perform unclassified non-supervisory duties below his grade level that are markedly inferior to those of his official position as Division Director.

h.)     On April 6, 2018, suspending plaintiff for two days and removing him from the agency's teleworking program.

i.)      Diminishing plaintiff's opportunities for professional exposure and career advancement.

j.)      Exposing plaintiff to embarrassment and humiliation in the workplace.

78.)    Defendant took one or more of the foregoing actions thereby subjecting plaintiff to a hostile, severe, and pervasively abusive work environment in order to retaliate against plaintiff because of his participation in EEO activities protected by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16 (incorporating 42 U.S.C. §2000e-3).

79.)    Defendant's violation of plaintiff's civil rights caused him to suffer emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life, and materially injured plaintiff's career.

## COUNT III
### (Race Discrimination)

80.)    Plaintiff repeats the allegations contained in paragraphs 1 through 79 above, as though fully set forth here.

81.)    Mr. Leach is an African American male.

82.)    Defendant took one or more of the following interrelated adverse employment actions against plaintiff because of plaintiff's race, which is African American:

a.)      In or about December of 2016 and January of 2017, first placing plaintiff under internal administrative investigation in defendant's Protection Directorate, and then referring plaintiff for investigation by defendant's Office of Investigation, providing false information during that investigation, steering investigators toward employees under Mr. Leach's supervision with whom he had genuine performance-based and conduct issues and failing to convey material information favorable to plaintiff during that investigation; either by themselves or with knowledge

that doing so would foreseeably cause plaintiff to suffer materially adverse objective changes in the terms, conditions, privileges and compensation in plaintiff's employment.

b.)     No later than January 9, 2017, relieving plaintiff of his substantive, supervisory duties as Division Director of the Security Division of defendant's Protection Directorate, and instead assigning him ad hoc, make-work assignments that were markedly inferior to and significantly less desirable than the duties plaintiff had been performing as Division Director.

c.)     Between May 24, 2017, and May 31, 2017, creating a new GS-15 supervisory Assistant Deputy Chief position in the Protection Directorate and rendering plaintiff's official position as Division Director superfluous.

d.)     In August of 2017, announcing the Assistant Deputy Chief position in the Protection Directorate for competition.

e.)     In or around August of 2017, selecting an African American security employee lower graded and significantly less qualified than plaintiff for the Assistant Deputy Chief position.

f.)     On January 31, 2018, proposing to suspend plaintiff for five days and remove him from defendant's telework program and on April 6, 2018, suspending plaintiff for two days and removing him from the agency's teleworking program.

g.)     In or around January 31, 2018, and February 15, 2018, detailing plaintiff out of his official position to the Information Technology Directorate ("ITD"), where he has been assigned ever since to perform unclassified non-supervisory duties below his grade level that are markedly inferior to those of his official position as Division Director.

h.)     On April 6, 2018, suspending plaintiff for two days and removing him from the agency's teleworking program.

83.)   Defendant took one or more of the foregoing adverse employment actions in order to discriminate against plaintiff because of his race and thereby violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2 (incorporated into 42 U.S.C. §2000e-16).

84.)   Defendant's violation of plaintiff's civil rights caused him to suffer emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life, and materially injured plaintiff's career.

## COUNT IV
### (Discrimination – Hostile and Abusive Work Environment)

85.)   Plaintiff repeats the allegations contained in paragraphs 1 through 84 above, as though fully set forth here.

86.)   Defendant intentionally subjected plaintiff to a hostile, severe, and pervasively abusive work environment because of his race by taking the following acts, among others:

a.)   In or about December of 2016 and January of 2017, first placing plaintiff under internal administrative investigation in defendant's Protection Directorate, and then referring plaintiff for investigation by defendant's Office of Investigation, providing false information during that investigation, steering investigators toward employees under Mr. Leach's supervision with whom he had genuine performance-based and conduct issues and failing to convey material information favorable to plaintiff during that investigation; either by themselves or with knowledge that doing so would foreseeably cause plaintiff to suffer materially adverse objective changes in the terms, conditions, privileges and compensation in plaintiff's employment.

b.)   No later than January 9, 2017, relieving plaintiff of his substantive, supervisory duties as Division Director of the Security Division of defendant's Protection Directorate, and instead assigning him ad hoc, make-work assignments in their place that were markedly inferior to and significantly less desirable than the duties plaintiff had been performing as Division Director.

c.)     Between May 24, 2017, and May 31, 2017, creating a new GS-15 supervisory Assistant Deputy Chief position in the Protection Directorate and rendering plaintiff's official position as Division Director superfluous.

d.)     In August of 2017, announcing the Assistant Deputy Chief position in the Protection Directorate for competition.

e.)     In or around August of 2017, selecting an African American security employee lower graded and significantly less qualified than plaintiff for the Assistant Deputy Chief position.

f.)     On January 31, 2018, proposing to suspend plaintiff for five days and remove him from defendant's telework program.

g.)     In or around January 31, 2018, and February 15, 2018, detailing plaintiff out of his official position to the Information Technology Directorate ("ITD"), where he has been assigned ever since to perform unclassified non-supervisory duties below his grade level that are markedly inferior to those of his official position as Division Director.

h.)     On April 6, 2018, suspending plaintiff for two days and removing him from the agency's teleworking program.

i.)     Diminishing plaintiff's opportunities for professional exposure and career opportunities.

j.)     Exposing plaintiff to embarrassment and humiliation in the workplace.

87.)     Defendant took one or more of the foregoing actions thereby subjecting plaintiff to a hostile, severe, and pervasively abusive work environment because of his race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2 (incorporated into 42 U.S.C. §2000e-16).

88.)     Defendant's violation of plaintiff's civil rights caused him to suffer emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life, and materially injured plaintiff's career.

## PRAYER FOR RELIEF

Wherefore, plaintiff Lester A. Leach respectfully requests that the Court enter judgment in his favor and award him the following relief.

A.     An Order declaring that defendant violated plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16, and restraining and enjoining defendant from further violations.

B.     Reassignment of plaintiff to the position of Deputy Assistant Chief in the Protection Directorate of the U.S. Mint, or an equivalent position commensurate with plaintiff's background, experience, and accomplishments.

C.     Record correction including, but not limited to:  a.) expungement of any documents in Mr. Leach's official personnel file reflecting his having been relieved of any of his duties as Division Director (GS-15) of the Security Division, placed under investigation, detailed to the Information Technology Division, proposed for suspension, suspended, or removed from defendant's telework program; and b.) destruction of the Report of Investigation generated in defendant's pretextual investigation of plaintiff or, in the alternative, destruction the Report of Investigation, except for one copy that will be maintained in strict confidence in the Office of Inspector General.

D.     An order precluding defendant from relying upon, considering, or disseminating the Report of Investigation generated in defendant's pretextual investigation of plaintiff or its contents for any purpose.

E.      Backpay in the amount denied plaintiff as a result of having been suspended.

F.      Restoration of leave used by plaintiff as a result of having been removed from defendant's telework program, as a result of defendant's discrimination and retaliation toward him, or needed by plaintiff for his participation in the pursuit of this action and the administrative complaints processes that preceded it.

G.      Compensatory damages.

H.      An award of the attorneys' fees and costs incurred in the prosecution of this action and in the administrative EEO complaints processes that preceded it.

I.      Such other relief as may be appropriate.

## JURY DEMAND

Plaintiff requests a trial by jury of all issues so triable.

Respectfully submitted,

_____
Robert C. Sedon, Esq.
 D.C. Bar No. 245100


_____
Charlene Bofinger, Esq.
 D.C. Bar No. 368879


_____
Molly E. Buie, Esq.
 D.C. Bar No. 483767
Seldon Bofinger & Associates, P.C.
1319 F Street, N.W., Suite 200
Washington, D.C. 20004
(202) 393-8200
Counsel for Plaintiff