UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LESTER A. LEACH,<br><br>　　Plaintiff,<br><br>　　　v.<br><br>JANET YELLEN, Secretary of the Treasury,<br><br>　　Defendant. | Civil Action No. 18-3075 (JEB) |

**MEMORANDUM OPINION**

　　A mere nine lines of text across three emails has yielded 45 pages of briefing in this dispute over whether these communications are subject to the attorney-client privilege. The emails reflect an exchange between management officials at the U.S. Mint and do not concern or involve Plaintiff Lester Leach. He would nonetheless like to use them in his own employment-discrimination suit against the Mint, a part of the Treasury Department, as the emails could conceivably show that another employee was subject to similar treatment. Defendant Secretary of the Treasury asserts that because the emails involve the Mint's Chief Counsel and seek legal advice, they are privileged and should not be disclosed. Plaintiff rejoins that the emails are not privileged and that, in any event, Treasury has waived any privilege that applied. The Court agrees on the first point: the emails in question are not shielded by the attorney-client privilege because they do not involve the giving or receiving of legal advice from the Chief Counsel or anyone else.

**I.　　Background**

1

This motion arises against the backdrop of the employment-discrimination case brought by Plaintiff, a Black man employed in the Protection Directorate of the U.S. Mint. See ECF No. 1 (Compl.), ¶ 15. He alleges that the Mint retaliated and discriminated against him based on his race, and also created a hostile and abusive work environment. Id., ¶¶ 66–88. Those claims, however, are not critical to this dispute's resolution. Rather, what is at issue is whether the attorney-client privilege applies to an email that was produced following a deposition of another Mint employee, Lisa Nicholson, who works in the Human Resources Department and may be a "me-too" witness who asserts similar discrimination. See ECF Nos. 41 (Defendant's Opposition to Plaintiff's Motion to Determine Privilege) at 2; 37 (Plaintiff's Motion to Determine Privilege) at 4–5.

The three emails produced were all sent on July 11, 2018. The first is from Nicholson to her supervisor Margaret Yauss, who was the Director of Human Capital at that time. See Def. Opp. at 2; Pl. Mot. at 5. In that email, Nicholson wrote that she needed to update Yauss about "issues associated with" the resume of another employee, Melanie Barber. See ECF No. 37-4 (Plaintiff's Second Supplemental Disclosure) at 4. Yauss then forwarded that email to Jean Gentry, who was Chief Counsel, and David Croft, who was then the acting Deputy Director of Human Resources. That second email, which was framed as an FYI, read, "I know I am stating the obvious but good employees should be continue to be 'attacked' [*sic*]. I really wish something could be done." Pl. 2d Supp. Disc. at 4; see also Def. Opp. at 3. Yauss also expressed support of Barber as "an excellent employee." Pl. 2d Supp. Disc. at 4; see also Def. Opp. at 3. Gentry responded in a third email saying, "I hope this helps" and mentioning that someone would "be reaching out to" both Croft and Yauss "to discuss a proposal that we have to

start an [administrative investigation]" regarding nonpublic information that Nicholson had allegedly shared.  See Pl. 2d Supp. Disc. at 4.

As is clear from the emails' text, they do not involve Leach and do not have particular relevance to his case beyond the fact that he was also subject to an administrative investigation.  See Compl., ¶ 7.  It is also unclear how Nicholson obtained the second two emails in the chain as she was not included on those messages and was not authorized to access or share the communications.  See Def. Opp. at 3.  These questions, however, need not waylay the Court's analysis.

## II.     Analysis

Plaintiff puts forward two theories for why the email chain is not privileged: 1) the emails do not seek or offer legal advice; and 2) even if any privilege is applied, the Mint waived it by not invoking it during Nicholson's depositions.  See Pl. Mot. at 7–10.  Defendant disputes both theories, but the Court need only reach the first as the case can be resolved on that issue alone.

### A.     Legal Standard

"The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law.  Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."  Upjohn Co. v. United States, 449 U.S. 383, 389 (1981) (citation omitted).  In particular, "the privilege applies to a confidential communication between attorney and client if that communication was made for the purpose of obtaining or providing legal advice to the client."  In re Kellogg Brown & Root, Inc., 756 F.3d 754, 757 (D.C. Cir. 2014).

This does not mean, however, that all communications involving a lawyer and an employee are confidential. The attorney-client privilege "protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." Fisher v. United States, 425 U.S. 391, 403 (1976). Courts in this circuit determine whether a disclosure was made for such a reason by asking "whether obtaining or providing legal advice was one of the significant purposes of the attorney-client communication." In re Kellogg Brown & Root, Inc., 756 F.3d at 760. Determining when the attorney-client privilege adheres can be especially difficult in communications with in-house counsel like those at issue here. Although a lawyer's status as an "in-house attorney . . . alone does not dilute the privilege," such counsel may have "certain responsibilities outside the lawyer's sphere." In re Sealed Case, 737 F.2d 94, 99 (D.C. Cir. 1984).

B.  Application to July 2018 Emails

Plaintiff maintains that the email exchange among Gentry, Yauss, and Croft was run-of-the-mill workplace griping that only conveyed facts, while Defendant frames the emails as a request for and the subsequent provision of legal advice. In the Mint's view, the email from Yauss to Gentry was a "request for legal advice" because by writing "FYI" and "I really wish something could be done," Yauss was seeking assistance from Gentry, the Mint's Chief Counsel, in formulating a remedy and "obtain[ing] legal advice in dealing with personnel matters." Defs. Resp. at 10; Pl. 2d Supp. Disc. at 4. Similarly, Defendant frames Gentry's response stating, "I hope this helps" and noting that someone would be reaching out to discuss an administrative investigation as the provision of such legal advice. See Defs. Resp. at 10; Pl. 2d Supp. Disc. at 4.

To start, the simple fact that this email exchange involved the Mint's Chief Counsel does not automatically elevate it to the status of a privileged communication. The emails, moreover,

4

do not involve legal advice.  Rather, they reflect Yauss's frustration with a situation in which she thought Nicholson was treating another employee unfairly.  Her wish that "something could be done" is consistent with airing such a grievance.  Similarly, Gentry's response does not bear the indicia of a communication intended to provide legal advice.  All she wrote was, "I hope this helps" and noted that someone would be reaching out to Yauss about a proposal, neither of which was a statement offering advice about how to handle the legal challenges of the personnel action.  Indeed, Gentry was not acting in the capacity of collecting facts and ensuring compliance in the context of an ongoing internal investigation; she merely mentioned that someone else would be reaching out about a potential administrative investigation in the future.  Cf. Upjohn Co., 449 U.S. at 397 (finding that attorney-client privilege applied to communications in ongoing internal investigation); In re Kellogg Brown & Root, Inc., 756 F.3d at 757 (privilege applied in context of "internal investigation to gather facts and ensure compliance with the law after being informed of potential misconduct").  Overall, nothing about either these emails suggests that "obtaining or providing legal advice was one of the significant purposes of" the email exchange. Id. at 760.  The Court thus finds that the three emails provided by Nicholson are not privileged.

### III. Conclusion

For the foregoing reasons, the Court will grant Plaintiff's Motion to Determine Privilege and find that the communications at issue are not privileged.  A contemporaneous Order so stating will issue this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date:  July 8, 2022